UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK                          CIVIL ACTION

VERSUS                                       NO. 13-6797

TOMS WELDING, INC.                           SECTION "H"


**ORDER AND REASONS**

      Before the Court is Plaintiff Great American Insurance Company of New York's ("Great American") Motion for Summary Judgment (R. Doc. 19).[1] Great American contends that is owes no coverage or duty to defend to Defendant Tom's Welding Inc. in litigation pending in the Eastern District of Texas. For the following reasons, summary judgment is GRANTED to Plaintiff.

---

[1] Pursuant to Federal Rule of Civil Procedure 56(f), this Court established a briefing schedule and ordered both parties to brief why summary judgment should be granted in their favor. (R. Doc. 29).

1

## BACKGROUND

This is a declaratory judgment action filed by Plaintiff Great American Insurance Company of New York ("Great American"). Great American disputes that it owes insurance coverage and a duty to defend to Defendant Tom's Welding, Inc. ("TWI") for its potential liability in a suit pending in the Eastern District of Texas (the "Texas Litigation").[2] In that suit, the United States is seeking a declaratory judgment that TWI and others are responsible for removal costs and civil penalties for an oil spill that allegedly seeped from a barge to which TWI had agreed to provide wreck removal services. The other defendants in the Texas Litigation have filed cross-claims for contractual indemnity against TWI.

The facts underlying the Texas Litigation are as follows. On September 1, 2008, the Tank Barge DIA-IA (the "Barge") became grounded. Thereafter, TWI entered into a wreck removal agreement with BEI, the owner of the Barge. The agreement transferred ownership of the Barge to TWI. The United States alleges, among other things, that after the transfer of ownership of the Barge to TWI, the Coast Guard notified TWI that it was required to submit a salvage plan before any wreck removal could occur. According to the United State's complaint, TWI never received approval of its salvage plan from the Coast Guard and unauthorized salvage operations began on the Barge. TWI owned the Barge and attempted salvage operations from December 30, 2008 to September 2009, at which point it sold the Barge to another entity.

---

[2] *United States of America v. Brothers Enterprises Inc et al.*, 1:13-cv-00017-MAC (E.D. Texas 2013).

On December 15, 2009, TWI received notice that the United States Coast Guard believed it was responsible for an oil spill that occurred from the Barge on or about December 7, 2009.[3] The spill created a sludge and sheen in the Port of Orange and required a clean-up operation in the Sabine River and its tributaries.

In this case, Great American seeks a judgment declaring that its policy with TWI does not cover any potential liability that TWI may have in the aforementioned suit. Great American issued a Marine Commercial Liability Insurance policy to TWI for the period in question (the "Policy"). It argues, however, that the Policy does not provide coverage or a duty to defend TWI's oil spill liability for a myriad of reasons. Having determined that only legal issues remained in this matter, this Court set a briefing schedule to permit both parties to present their arguments. This Court will address each of those arguments in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the

---

[3] The United State's complaint in the Texas Litigation alleges that the spill occurred on or before October 8, 2009.

[4] Fed. R. Civ. P. 56(c) (2012).

3

nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[9]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

---

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[7] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[10] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[11] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).


## LAW AND ANALYSIS

At the outset, the Court notes that state law applies to the coverage issues presented. Absent an established federal admiralty rule, or a need for national uniformity that warrants fashioning such a rule, the Supreme Court has held that state law should apply to issues of maritime insurance.[12] Accordingly, the parties do not dispute that Louisiana law governs this dispute.[13]

### A. Coverage

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[14] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[15] "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[16] "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[17]

---

[12] *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320 (1955).

[13] *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 380 (5th Cir. 1987) ("[I]t is well settled law, that the law of the state in which the contract was formed, in the absence of federal admiralty rule, determines the rights of the parties.").

[14] *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So. 2d 96, 99 (La. 2004).

[15] La. Civ. Code art. 2046.

[16] *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43 (La. 2000).

[17] *Mayo*, 869 So. 2d at 99–100.

"The determination of whether a contract is clear or ambiguous is a question of law."[18] However, "ambiguous provisions must be strictly construed against the insurer, though not to such a degree that the language of the policy is perverted."[19] "Courts should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry."[20] "The insured bears the burden of proving that the incident giving rise to a claim falls within the policy's terms. But the insurer bears the burden of proving that an exclusion to coverage applies."[21]

The policy at issue contains a "Marine Commercial Liability Limited Pollution Coverage Endorsement" (the "Limited Pollution Endorsement"). This Limited Pollution Endorsement covers TWI for property damage it becomes obligated to pay as a result of "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" resulting from its "Maritime Operations" only.  The term "Maritime Operations" is defined in the Policy as "the ownership, maintenance, operation, use, repair, loading or unloading of owned, leased, rented or chartered watercraft, or other watercraft in your care, custody, or control solely in conjunction with the operations listed in the policy Declarations."

TWI argues that it is owed a defense and coverage under the Limited Pollution Endorsement.  Great American, on the other hand, avers that this

---

[18] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).

[19] *Cont'l Cas. Co. v. Smith*, 243 F. Supp. 2d 576, 580 (E.D. La. 2003).

[20] *Id.*

[21] *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728, 750 (E.D. La. 2014) *aff'd*, 593 F. App'x 408 (5th Cir. 2015) (internal citations and quotations omitted).

endorsement does not provide TWI with insurance coverage for liability in the Texas Litigation for many reasons: (1) the Policy Declaration states that TWI's business was "ship repair," which does not encompass wreck removal; (2) the incident in question did not arise at an insured location; (3) the claims in the Texas Litigation are not for property damage; (4) the endorsement excludes coverage if the polluting incident was not known to TWI within 72 hours; (5) the endorsement excludes coverage if TWI did not provide Great American with notice of the polluting event within 30 days of its knowledge of it; (6) the endorsement excludes coverage for obligations arising solely by statute; (7) the endorsement excludes coverage for penalties or punitive damages; (8) the endorsement excludes coverage for damages caused by TWI's willful misconduct.

In response, TWI propounds a defense only to Great American's first argument—that the Policy does not cover wreck removal. The parties agree that the Limited Pollution Endorsement provides coverage for incidents that occur during TWI's "Maritime Operations"—identified in the Policy Declarations as "ship repair."  TWI argues, however, that coverage for wreck removal is necessarily encompassed within the scope of ship repair.  Great American, on the other hand, contends that ship repair and wreck removal are two very different functions and call for different policies of insurance.  Great American argues that the risks involved in salvage operations at the location of a wrecked vessel far surpass that of those incurred in repairing ships in a controlled environment. Great American states that wreck removal coverage is typically provided under a P&I policy and that TWI was aware of this fact.  Indeed, on two prior occasions

7

TWI obtained additional coverage from Great American to cover wreck removal projects. TWI rebuts that Great American's argument is mere semantics and that it routinely retrieves vessels that have broken down far from its repairing facilities.

      This Court believes that Great American has the better argument on this issue. Because there is scant case law discussing the distinction between wreck removal and ship repair, this Court will apply "the general rule of construction that words in an insurance contract are to be construed in accordance with their plain and ordinary meaning."[22] Clearly, the term "wreck removal" contemplates, as here, a vessel that is a total loss that must be removed from navigable channels.[23] There is no aspect of repair contemplated by the removal of wreckage. This Court finds that there is a clear distinction between moving a vessel from the water to a facility for repair and dismantling a vessel for scrap while it remains in the water, as was attempted here. Accordingly, this Court agrees that the Limited Pollution Endorsement does not cover liability arising out of TWI's wreck removal operations. In coming to this conclusion, the Court notes that it is aware, as frequently quoted by TWI, that any ambiguity in an insurance policy should be construed in favor of the insured, however, it holds that the policy at issue here is clear and unambiguous as to its scope of coverage.

---

[22] *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) ("The parties' intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.").

[23] *See* Wreck Removal Act, 33 U.S.C. § 409 (West).

Notwithstanding this conclusion, TWI is not entitled to coverage for a myriad of other reasons. First, TWI does not dispute that the Coast Guard sent it a letter on December 15, 2009 stating that it believed that the Barge was the source of a pollution incident that occurred on or about December 7, 2009. TWI does not submit any evidence that it knew of the incident prior to this date. The Limited Pollution Endorsement explicitly states that it does not provide coverage for damages that did not become known to TWI within 72 hours of the accident or occurrence. Therefore, limited pollution coverage is expressly barred under this exclusion.

Second, TWI admits that it did not provide Great American with notice of the Coast Guard's 2009 letter until July 3, 2013—six months after the Texas Litigation was filed against it. The Limited Pollution Endorsement explicitly excludes coverage if TWI fails to notify Great American of "an actual or potential pollution accident or occurrence within 30 days of [its] *knowledge* of the event." TWI attempted to defend the delay by explaining that it had already sold the Barge when it was notified of the pollution and thus merely provided the Coast Guard with the bill of sale. This explanation, however, does not account for the six-month delay in notifying Great American after TWI was sued in the Texas Litigation. Certainly at that point TWI should have understood that the United States believed it was liable for the pollution regardless of the bill of sale. Therefore, TWI's failure to notify Great American within 30 days of its knowledge of the oil spill excludes it from coverage under the Limited Pollution Endorsement.

Third, the Limited Pollution Endorsement expressly excludes coverage for damages that are from "actual or alleged liability to evaluate, monitor, control, remove and/or clean-up seeping, polluting or contaminating substances to the extent such liability arises solely from any obligation imposed by any statute, rule, ordinance, regulation."  The United State's complaint against TWI seeks a declaratory judgment that TWI and the other defendants are liable under the Oil Pollution Act of 1990 and an assessment of civil penalties under the Clean Water Act.  Accordingly, any potential liability that TWI may face in the Texas Litigation arises solely from obligations imposed by statute.  Coverage under the Limited Pollution Endorsement is therefore barred by this exclusion as well.

Finally, the Limited Pollution Endorsement expressly excludes coverage for "fines, penalties, exemplary or punitive damages."  The only monetary recovery sought by the United States in the Texas Litigation is civil penalties under the Clean Water Act.  As clearly stated by this exclusion, the Policy does not insure against liability for penalties.

Given the foregoing, this Court need not address every argument offered by Great American to support its position that it does not owe TWI coverage for its potential liability in the Texas Litigation.  It is clear that there are any number of reasons why TWI is not entitled to coverage under the Limited Pollution Endorsement.  In addition, the Policy totally excludes coverage for property damage caused by the discharge of pollutants.  TWI has not pointed this Court to any other provision of the Policy that would provide it coverage.

Out of an abundance of caution, however, this Court notes that TWI is also

not entitled to coverage for the cross-claims in the Texas Litigation because the Policy contains a contractual liability exclusion, which states that coverage will not be provided when "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  In their cross-claims in the Texas Litigation, the other defendants seek to enforce the salvage contract in which TWI agreed to indemnify them from any damages resulting from pollution or ship breaking.[24]  Clearly this is precisely the type of agreement that the Policy excludes from coverage.  Accordingly, TWI is not entitled to coverage for its liability on the cross-claims in the Texas Litigation.

### B. Duty to Defend

Finally, TWI argues that Great American has breached its duty to defend. When determining whether an insurance company has a duty to defend a suit against its insured, Louisiana courts apply the so-called "eight corners rule."[25] Under this rule, the court looks only to the four corners of the petition and the four corners of the insurance policy.[26] An insurer has a duty to defend against the suit if, assuming all allegations in the petition to be true, there would be both liability to the plaintiff and coverage under the policy.[27]  "An [insurer's] duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[28]  "In other words, the test is not

---

[24] No. 13-17, Doc. 11, p.12.

[25] *Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 1 Cir. 2001).

[26] *Id.* (citing *Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969)).

[27] *Id.*

[28] *Steptore v. Masco Const. Co.*, 643 So. 2d 1213, 1218 (La. 1994).

whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage."[29] "Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy"[30] "Courts should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry."[31] "[A]n insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims."[32]

      TWI argues that the complaint in the Texas Litigation supports a cause of action for the threatened or actual escape of pollutants from TWI's maritime operations, which is covered by the Policy's Limited Pollution Endorsement. Great American rebuts that it does not have a duty to defend TWI for some of the same reasons that the Limited Pollution Endorsement does not provide TWI with coverage: namely, that the Policy Declaration states that TWI's business was "ship repair," which does not encompass wreck removal. Having already determined that the plain meaning of the terms "wreck removal" and "ship repair" bar coverage, this Court likewise holds that Great American had no duty to defend TWI. The United State's complaint in the Texas Litigation unambiguously states that the Barge had been declared a total loss and that TWI entered into a wreck removal agreement and engaged in salvage operations

---

[29] *Johnson v. Misirci*, 955 So. 2d 715, 718 (La. App. 4 Cir. 2007).

[30] *Id.*

[31] *Cont'l Cas. Co.*, 243 F. Supp. 2d at 580.

[32] *Johnson*, 955 So. 2d at 718.

12

that resulted in the removal of significant portions of the Barge's structure. No mention of repair is made. In considering the policy as a whole and the intentions of the parties, it is clear that the policy at issue here does not provide coverage for wreck removal operations, and therefore clearly does not provide coverage for the allegations asserted in the complaint. Accordingly, under the eight corners rule, Great American has no duty to defend TWI for the allegations in the Texas Litigation.

## CONCLUSION

For the foregoing reasons, Great American's Motion for Summary Judgment is GRANTED, and TWI's Motion for Summary Judgment is DENIED. Judgment is entered in favor of Great American, and this case is closed.

New Orleans, Louisiana, this 26th day of August, 2015.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**